UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
WILLIAM GALLUCCI,                                 )
                                                                )
            Plaintiff,                                         )
                                                                )
v.                                                                )            Civil Action No. 04-1064 (RCL)
                                                                )
ELAINE CHAO, SECRETARY,                       )
U.S. DEPARTMENT OF LABOR,                  )
                                                                )
            Defendant.                                      )
_____)

## MEMORANDUM OPINION

Before the court is the motion to dismiss of defendant Elaine Chao ("Secretary"),

Secretary of the United States Department of Labor.  The Secretary moves to dismiss the

complaint on the grounds that the court lacks subject matter jurisdiction.  For the reasons set

forth herein, the court will grant the Secretary's motion.

I.        STANDARD OF REVIEW

            In opposing a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion to establish subject

matter jurisdiction by a preponderance of the evidence.  *McCutt v. Gen. Motors Acceptance*

*Corp. of Indiana*, 298 U.S. 178, 189 (1936).  A complaint may be dismissed for lack of subject

matter jurisdiction only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.' "  *Sinclair v. Kleindienst*, 711 F.2d 291,

293 (D.C. Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court assumes

the truth of the allegations made in the complaint and construes them favorably to the pleader. *Artis v. Greenspan*, 158 F.3d 1301, 1305-06 (D.C. Cir. 1998).  In determining whether the plaintiff has met his burden, the court may look to materials beyond the pleadings.  *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

II.      FECA Statutory Scheme[1]

Congress enacted the Federal Employees' Compensation Act ("FECA") to provide for a workers' compensation scheme.  The Act provides that "[t]he United States shall pay compensation for the disability or death of an employee resulting from injury sustained while in the performance of his duty[.]"  5 U.S.C. § 8102 (a) (2000).  The monthly pay at the time of a claimant's injury or the monthly pay at the time that the disability begins determines the compensation for total or partial disability.  5 U.S.C. §§ 8101(4), 8114 (2000).  The actual earnings of the employee determine the wage-earning capacity of the employee, "if his actual earnings fairly and reasonably represent his wage-earning capacity."  5 U.S.C. § 8115 (a) (2000).  "When an overpayment has been made to an individual...adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled."  5 U.S.C. § 8129 (a) (2000).

The Secretary of Labor may "review an award for or against payment of compensation at any time on [her] own motion or on application."  5 U.S.C. § 8128(a) (2000).  Upon review under section 8128 if the Secretary finds that the wage-earning capacity of the individual would probably have increased but for the injury, the Secretary shall recalculate prospectively the

---

[1] A cursory understanding of FECA will aid in understanding the facts of this case.

monetary compensation payable for disability on the basis of an assumed monthly pay corresponding to the probable increased wage-earning capacity.  5 U.S.C. § 8113 (a) (2000).

FECA authorizes the Secretary to prescribe rules and regulations necessary for the administration and enforcement of the Act.  5 U.S.C. § 8149 (2000).  FECA authorizes the Secretary to administer FECA and to appoint employees to administer FECA.  5 U.S.C. § 8145 (2000).  The Secretary has delegated the authority to administer FECA to the Office of Worker's Compensation Programs ("OWCP").

If a claimant disagrees with OWCP's final claims determination, FECA provides for administrative review.  From the date of the decision, the claimant may: (1) within 30 days, request a hearing before an OWCP hearing representative or request that such representative review the record, 5 U.S.C. § 8124 (2000), 20 C.F.R. § 10.616 (2003); (2) within one year, request reconsideration, 20 C.F.R. § 10.606 (2003); 20 C.F.R. § 10.607 (2003); or (3) within one year, file an appeal with the Employees' Compensation Appeals Board ("ECAB").  20 C.F.R. §§ 10.625, 501.3(d) (2003).  Administrative review is the claimant's only avenue for review of a claim because Congress precluded judicial review of claims disputes.  5 U.S.C. § 8128 (b) (2000).

III.   BACKGROUND

On April 23, 1973, plaintiff Gallucci, an apprentice plate printer for the United States Bureau of Printing and Engraving ("Bureau"), which is part of the United States Department of the Treasury ("Treasury"), injured his back.  Gallucci made a timely application to OWCP, which is a division of the Department of Labor ("Labor").  Labor, through OWCP, approved Gallucci's application for workers' compensation benefits under FECA.  Gallucci received medical benefits

3

and temporary total disability compensation at the pay-rate of an apprentice plate printer.

In 1975, OWCP determined that Gallucci was capable of doing the work of a lab technician.  OWCP changed his total disability compensation to loss of wage-earning capacity ("LWEC"), thus OWCP reduced Gallucci's benefits by $110.00 per week.

On July 24, 1983, Gallucci began nine years of employment as a psychology technician for the National Institute of Mental Health, ("NIMH") at a salary of $389.54 per week.  On December 21, 1992, Gallucci began employment with the Veterans Administration, ("VA") as a readjustment counseling therapist earning $754.40 per week.

In 2002, Gallucci learned that the pay-rate for his worker's compensation benefits should have been that of a journeyman plate printer due to Labor's own policy.  Gallucci timely informed OWCP of the discrepancy, at which point OWCP assigned the case to Mr. Huff for review.  In a letter dated May 21, 2003, OWCP informed Gallucci that from August 13, 1981 to September 9, 2000 his benefits should have been based upon the pay-rate of journeyman plate printer, as opposed to the pay-rate of an apprentice plate printer.  OWCP informed Gallucci that the difference between his actual LWEC entitlement and the money he received for the period was $828,980.11.  The same letter also explained that during the period from December 18, 1993 to October 31, 2001, Gallucci received benefits from the Office of Personnel Management ("OPM") at the same time that he was receiving FECA benefits.  OWCP determined that Gallucci's overcompensation amounted to $105,744.10, which OWCP would deduct from the $828,980.11 for a total compensation of $723,236.01.[2]

In a letter dated June 4, 2003, Treasury asked Labor not to make the payments specified

---

[2]Claimants may not receive both FECA and OPM benefits at the same time.  *See generally* Robert B. Hutchins, 52 ECAB 344 (2001).

in the May 21, 2003 letter.  Treasury asserted that it had new information and requested a reasonable opportunity to further investigate the case.  From June 2003 to May 26, 2004 Gallucci received no word from OWCP about the additional money owed to him.  On May 26, 2004 Gallucci's counsel received a facsimile that a decision would be coming within fourteen days.

On June 28, 2004 Gallucci filed the original complaint with the court.  Later that day, Gallucci's counsel received a letter dated June 25, 2004 from OWCP.  The letter stated that OWCP determined that Gallucci was entitled to two monetary pay-rate increases.  The first being from April 23, 1974 to April 28, 1976 because the pay-rate for the job of apprentice plate printer increased from $200.17 per week to $234.93 per week.  The second pay increase was for April 28, 1976 till the present because Gallucci would have graduated from apprentice plate printer to journeyman on that date.  OWCP determined that the pay-rate for the latter time period was $612.94 a week.  The letter stated that OWCP needed to recalculate the monies owed to Gallucci.

On June 29, 2004, OWCP informed Gallucci that OWCP proposed to change his LWEC determination based on the actual wages that he earned beginning in July 24, 1983 due to his employment at NIMH, and again in December 21, 1992 due to his employment with the VA. The OWCP wanted to reduce Gallucci's compensation because he was "employed in a new job [(i.e. a job different from the job for which he or she was rated)] which pays at least 25% more than the current pay of the job for which the claimant was rated."[3]  (Def. Att. E (quoting Federal (FECA) Procedure Manual 2-0814-11 c (2)).)  The notice advised Gallucci that he had thirty days

_____

[3] The weekly salary for a laboratory technician on July 24, 1983 was $138.00.  Hence, $138.00 multiplied by 1.25 is $172.50.  The NIMH salary was $389.54, which is greater than $172.50, thus the criteria had been met.

to submit additional evidence or argument relevant to OWCP's decision to change his LWEC
determination.

In a letter dated July 16, 2004, OWCP gave Gallucci an explanation of his entitlement to
compensation due to the two increases in pay-rate as determined in the June 25, 2004 decision, as
well as the proposed reduction of compensation proposed in the June 29, 2004 letter.

In a letter dated August 9, 2004, OWCP formalized the findings in the proposed reduction
of compensation, as well as the payment schedule of the July 16, 2004 letter.  OWCP
inadvertently failed to attach the appeal rights to the letter.  Once they were notified of this error,
Gallucci was sent a copy of the appeal rights on August 13, 2004, and was given 30 days from
that date to exercise his appeal rights.  On August 12, 2004, Gallucci was paid $455,479.87 in
additional compensation due to the recalculation of his of his pay-rate and his LWEC.

Gallucci alleges that Treasury had no legal right to be involved after May 21, 2003
because the May 21, 2003 letter was a final decision.  Gallucci alleges that Treasury's
involvement is a violation of his right to due process and directly violates FECA.  Gallucci also
claims that the court has jurisdiction under the Administrative Procedure Act and the Declaratory
Judgment Act.

IV.    DUE PROCESS CLAIM

It is well established that this court has subject matter jurisdiction to review a decision
made under FECA if there has been a constitutional violation.  *Lepre v. Dept. of Labor*, 275 F.3d
59, 67 (D.C. Cir. 2001).  Gallucci alleges that Treasury's unlawful interference with the OWCP
investigation is a violation of due process.  This court will not determine if Treasury unlawfully
interfered with the OWCP investigation because FECA's meaningful post-deprivation remedies

ensure that Gallucci receives due process.

The fundamental requirements of due process are "notice and the opportunity to respond." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citing Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1281 (1975)); *Mullane v. Cent. Bank of Hanover & Trust Co.*, 339 U.S. 306, 313-14 (1950).  Due process is not violated when a person is unlawfully deprived of property and a meaningful post-deprivation remedy is provided. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1981) (an unauthorized intentional deprivation of property did not violate due process because the state provided an adequate post-deprivation remedy).  Unlawfully depriving a claimant of benefits does not violate due process because FECA provides for meaningful post-deprivation remedies.  *Lepre v. Dept. of Labor*, 275 F.3d at 71 (when notice is lost in the mail the availability of OWCP reconsideration and appeal provides sufficient due process); *see also Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991) (even though terminating the claimant's benefits was unauthorized and in violation of established procedures, the claimant's right to due process was not violated because adequate post-deprivation remedies were available under FECA).

In the instant case, Gallucci received adequate notice of the deprivation of his benefits in the August 9, 2004 letter.  Gallucci's only claim to violation of his due process rights is that the breadth of Treasury's involvement in the investigation goes against OWCP rules and procedure. Even if Treasury's involvement in the investigation is unlawful Gallucci still has post-deprivation remedies available to him under FECA, thus Treasury's involvement in the investigation does not violate Gallucci's right to due process.

The court has no found no alleged facts that would constitute a violation of Gallucci's

right to due process, thus the court does not have subject matter jurisdiction to hear this case based on a constitutional violation of due process rights.

V.      THE *KYNE* DOCTRINE

Gallucci claims that this court has subject matter jurisdiction in this case because this court has the power to review clear violations of statutory mandate, a.k.a. the *Kyne*[4] doctrine. The *Kyne* doctrine allows for judicial review of an agency action when the agency exceeds its statutory authority or violates a clear statutory mandate, even if Congress precluded judicial review in the Act.  *Leedom v. Kyne*, 358 U.S. 184, 190-191 (1958), *see also Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233 (1968).  Subsequently, the D.C. Circuit restated the *Kyne* doctrine to "apply only when the agency's error is patently a misconstruction of the Act, or when the agency has disregarded a specific and unambiguous statutory directive." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988).  The Secretary contends that 5 U.S.C. § 8128 (b) prevents any judicial review of actions by the Secretary, except actions that are unconstitutional.

The text of § 8128 (b) is as follows:

> The Secretary or her designee in allowing or denying payment under this subchapter is-
>
>> (1) final and conclusive and with respect to all questions of law and fact; and,
>>
>> (2) *not subject to review* by another official of the United States or by a court by mandamus or otherwise.

---

[4]*Leedom v. Kyne*, 358 U.S. 184 (1958).

5 U.S.C. § 8128 (b) (emphasis added).

This court will follow the lead of the *Lepre* court and will not decide if the *Kyne* doctrine applies to § 8128 (b) because the facts of the case do not meet the standard to trigger the *Kyne* doctrine. *Lepre*, 275 F.3d at 74. The *Kyne* doctrine allows the district court to conduct a review of the alleged facts of the case to determine if the Secretary patently misconstrued an Act or disregarded a clear statutory mandate. *See Griffith*, 842 F.2d at 493-94. If the Secretary's action is not a clear violation of the statute, then the *Kyne* doctrine does not apply. *See Id.* at 493-94. If the court finds that the *Kyne* doctrine does not apply, then the court should dismiss for lack of subject matter jurisdiction. *Id.* at 494.

In *Griffith*, the statute in question did not expressly address the matter that the court was concerned with. *Id.* at 493. The court found that while the agency's construction of the statute was not the only one, the agency's construction was plausible. *Id.* at 494. The court found that any error in the agency's construction of the statute was to not incorporate another statute that was not part of the "organic" Act. *Id.* The court found that plaintiff's construction of the statutes was highly nuanced and not the type of plain legal error needed to trigger the *Kyne* doctrine. *Id.*

Gallucci claims that the May 21, 2003 letter is a final decision letter, and that it is a violation of FECA for the Secretary to give Treasury (the employer in this case) an appeal. The Secretary maintains that the letter was not a final decision. Whether or not the letter is a final decision has no bearing on the outcome of the motion to dismiss because the result for either determination about the letter is the court holding that the *Kyne* doctrine does not apply to the facts of this case.

If the letter is not a final decision, then the investigation was not closed and Treasury not

only has the right to be involved, Treasury must be involved in the claim.  5 U.S.C. § 8124 (2000).  Since, Treasury must be involved in the claim, there is no violation of a clear statutory mandate and this court does not have jurisdiction to hear this case.

If the letter is a final decision, then the court may infer that Treasury's involvement is the granting of an appeal.  There is no clear statutory mandate that the Secretary may not grant Treasury an appeal.  Gallucci alleges that the Secretary violated 5 U.S.C. § 8124, it reads as follows:

> (a) The Secretary of Labor shall determine and make a finding of facts and make an award for or against payment of compensation under this subchapter after-
>
> > (1) considering the claim presented by the beneficiary and the report furnished by the immediate superior; and
> >
> > (2) completing such investigation as he considers necessary.
>
> (b)(1) Before review under section 8128(a) of this title, *a claimant for compensation not satisfied with a decision* of the Secretary under subsection (a) of this section is entitled...to a hearing...

5 U.S.C. § 8124 (emphasis provided).

There is no clear denial of a right to appeal for Treasury, only a clear right of appeal for the claimant is preserved.  § 8124.  Instead, Congress decided that the Secretary would have the right to "review an award for or against payment of compensation at any time on [her] own motion or *on application*."  5 U.S.C. § 8128 (a) (emphasis provided).  Due to the broad language of § 8128 (a) it is not clear that the Secretary may not grant an appeal to Treasury.  The words "on application" do not specify whose application the Secretary may take; the statute is

10

ambiguous to that regard.  § 8124's silence on employer appeals and § 8128 (a) giving the

Secretary broad powers of review shows that there is no clear statutory mandate barring the

Secretary from granting an appeal to Treasury.

Since there are no actions by the Secretary that clearly violate the statutory framework of

FECA, this court has no subject matter jurisdiction to hear this case under the *Kyne* doctrine.

VI.     ADMINISTRATIVE PROCEDURE ACT

The Administrative Procedure Act ("APA") does not create "subject matter jurisdiction

permitting federal judicial review of an agency."  *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

FECA does not allow for judicial review of the Secretary's benefit decisions, thus the APA does

not apply to FECA.  5 U.S.C. § 701 (a)(1) ("(a) [t]his chapter applies, according to provisions

thereof, except to the extent that - (1) statutes preclude judicial review"); 5 U.S.C. § 8128 (b); *see*

*Lepre v. Dep't of Labor*, 275 F.3d 59 (holding that § 8128 (b) prevents a federal court from

having subject matter jurisdiction to review a "garden-variety" dispute over benefits); *see also*

*Staake v. United States Secretary of Labor*, 841 F.2d 278, 282 (9th Cir. 1988) (concluding that

the APA does not provide subject matter jurisdiction to review the Secretary's action with

regards to a FECA claim).

In *Califano*, the plaintiff asked the Court to grant subject matter jurisdiction to review an

action by the Social Security Administration.  *Califano*, 430 U.S. at 103.  The Court held that the

APA did not create subject matter jurisdiction for judicial review of an agency action because the

legislative history of 28 U.S.C. § 1331 (a), Social Security Act § 205(g) (statute precluding

judicial review of the findings of the Secretary), and the APA indicated that Congress intended

for subject matter jurisdiction to come from another source and the APA did not contain an

explicit grant of subject matter jurisdiction. *Id.* at 106-07.

In the instant case, there is no independent basis for subject matter jurisdiction because federal question jurisdiction is precluded by 5 U.S.C. § 8128 (b). Gallucci's amended complaint basis for subject matter jurisdiction in the court is under the APA. The court can not grant subject matter jurisdiction based the on APA alone because to do so would directly contradict the precedent the Supreme Court set out in *Califano*. Since the APA does not create subject matter jurisdiction, this court does not have subject matter jurisdiction to hear this case based on the APA.

VII.    DECLARATORY JUDGMENT ACT

The court has no subject matter jurisdiction to hear this case under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202. The DJA " 'is not an independent source of federal jurisdiction[;]' " the DJA is only available if a "judicially remediable right" already exists. *C&E Services, Inc. of Washington v. District of Columbia Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ( quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))).

In *C&E*, the plaintiff claimed that the defendant violated a statute. *Id.* The statute alone created no private remedy. *Id.* Since there was no independent source of federal subject matter jurisdiction the court dismissed the claim brought under the DJA. *Id.* Gallucci has no independent source of subject matter jurisdiction, like the plaintiff in *C&E* had no independent source of subject matter jurisdiction. Thus, the court has no subject matter jurisdiction to adjudicate this case based on the DJA.

VIII.   CONCLUSION

For the foregoing reasons, the court will GRANT the defendant's motion to dismiss in a separate order issued this date.


Signed by Royce C. Lamberth, United States District Judge, June 17, 2005.